# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CIVIL ACTION NO. 1:24-CV-281-KDB-DCK

| | | |
|---|---|---|
| **CHRISTOPHER ROSS HUFFMAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's Complaint (Document ("Doc.") No. 1) (hereinafter "Complaint") to review a decision of the Commissioner of Social Security denying Plaintiff's application for Social Security Disability Insurance benefits and Supplementary Security Income Benefits for lack of disability. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that the Commissioner's decision be <u>affirmed</u>.

## BACKGROUND

Plaintiff Christopher Ross Huffman ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Document No. 1). Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on or about October 17, 2022, under Title II of the Social Security Act, 42 U.S.C. § 405, <u>and</u> for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, both alleging an inability to work due to a disabling condition beginning July 1, 2021. (Transcript of the Record of Proceedings ("Tr.") 17, 253, 260). The Commissioner of Social Security (the

"Commissioner" or "Defendant") denied Plaintiff's application initially on May 17, 2023, and again after reconsideration on July 17, 2023. (Tr. 129, 143, 148). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> Your condition results in some limitations in your ability to perform work related activities. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age, education, and work experience in determining how your condition affects your ability to work. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.

(Tr. 150).

Plaintiff filed a timely written request for a hearing on July 27, 2023. (Tr. 153). On December 1, 2023, Plaintiff appeared and testified at a hearing before the Administrative Law Judge (the "ALJ"). (Tr. 17, 38-68). In addition, Jacquelyn Schabacker, a vocational expert ("VE"), and Russell R. Bowling, Plaintiff's attorney, appeared at the hearing. Id. A supplemental hearing was held on August 7, 2024, where Plaintiff appeared and testified about additional evidence developed after the initial hearing. (Tr. 69-80).

The ALJ issued an unfavorable decision on August 9, 2024, denying Plaintiff's claim. (Tr. 17-31). On September 2, 2024, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on October 11, 2024. (Tr. 1-3). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id.

2

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on November 15, 2024. (Document No. 1). On December 6, 2024, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's Opening Brief (Document No. 8) was filed March 27, 2025; and the Commissioner's Brief (Document No. 9) was filed April 22, 2025. Plaintiff's Reply Brief (Document No. 10) was filed May 6, 2025.

This matter is ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Kenneth D. Bell is now appropriate.

## STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between July 1, 2021, and March 31, 2027.[1] (Tr. 20, 253, 290). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1)     whether claimant is engaged in substantial gainful activity -
>          if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled.

(3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled.

(4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5)    whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4) (i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 31).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since July 1, 2021, the alleged disability onset date. (Tr. 20). At the second step, the ALJ found that Plaintiff's crush injury to the left hand, seizure disorder, migraines, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder, were severe impairments.[2] Id. At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 21).

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a de minimis test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff retained the capacity to perform light work activity, except that the claimant:

> can only frequently operate hand controls with the left hand; can frequently handle, finger, and feel with the left hand; can never climb ladders, ropes, or scaffolds; can occasionally crawl; can never work at unprotected heights, work near moving mechanical parts, or operate a motor vehicle; can work in weather, humidity, wetness, extreme cold, extreme heat, and vibration occasionally; can work in a moderate noise environment; can sustain concentration, persistence, and pace sufficient to carry out simple instructions in two-hour increments with no specific production rate such as assembly line work or work that requires hourly quotas; and can interact frequently with supervisors, coworkers, and the public.

(Tr. 23). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff is unable to perform past relevant work as a cook helper. (Tr. 30). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 30-31). Specifically, the VE testified that according to the factors given by the ALJ, occupations Plaintiff could perform included a photocopy machine operator, a routing clerk, and a cafeteria attendant. (Tr. 31). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between July 1, 2021, and the date of the decision, August 9, 2024. Id.

On appeal to this Court, Plaintiff alleges the ALJ's decision includes the following errors: (1) the ALJ failed to properly consider the underlying symptoms of Plaintiff's seizure disorder under Listing 12.07 and his RFC assessment is not supported by substantial evidence under

6

paragraph "B" criteria; and (2) the ALJ failed to comply with 20 C.F.R. §§ 404.1520c and 416.920c when evaluating the medical opinions of Ronald Koenig, M.D., Gwyneth McCawley, M.D., Nathan Jablecki, M.D., and Shannon Mitchell, PA. (Doc. Nos. 4, 8). The undersigned will discuss each of these contentions in turn.

### A. Plaintiff's Seizure Disorder

In the first assignment of error, Plaintiff argues that the ALJ incorrectly evaluated Plaintiff's seizure disorder under Listing 11.02 instead of considering whether Plaintiff's impairments met or equaled Listing 12.07. (Document No. 8 at pp. 5-6) (citing Tr. 20). To meet the requirements of Listing 12.07(A), Somatic symptom and related disorders, a claimant must show:

> [M]edical documentation of one or more of the following: 1) symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder; 2) one or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or 3) preoccupation with having or acquiring a serious illness without significant symptoms present.

20 CFR Part 404, Subpart P, Appendix 1, Listing 12.07.

Plaintiff contends that the ALJ erred in not discussing whether Plaintiff met the requirements of Listing 12.07 given the ALJ's determination that Plaintiff's seizure disorder was a severe impairment. (Document No. 8 at p. 6) (citing Tr. 20). Plaintiff goes on to discuss his various medical providers' evolving understanding as to whether his seizures were epileptic or non-epileptic in nature. Id. at pp. 6-7 (citing Tr. 713, 744-745, 999-1000, 1011). Plaintiff asserts that this evidence should have triggered the ALJ's duty to consider Plaintiff's seizures under listing 12.07, but instead the ALJ stated that "the severity of the claimant's seizure disorder does not meet the requirements of Listing 11.02 because his providers cannot ascertain what type of seizures he

7

is experiencing." Id. at p. 8 (citing T 21). Plaintiff asserts that further proceedings are necessary so the ALJ can consider Plaintiff's seizure symptoms in comparison to the requirements of Listing 12.07. Id. at p. 9.

In support of this argument, Plaintiff turns to Miller v. Saul, No. 1:18-CV-350-RJC-DSC, 2019 WL 7372706, at *4 (W.D.N.C. Dec. 30, 2019), a case where the court found a harmful error when the ALJ considered a plaintiff's seizure disorder under Listing 11.02 instead of Listing 12.07. Id. at pp. 5-6. The court in Miller noted "ample evidence of Plaintiff's pseudoseizures such that Listing 12.07 was implicated" and a lack of discussion of pseudoseizures under Listing 12.07 preventing a determination the ALJ's decision at step 3 was supported by substantial evidence. Miller, 2019 WL 7372706, at *4 (citing Wheeler v. Saul, 2019 WL 4565260, at *4 (M.D.N.C. Sept. 20, 2019) (remanding for further proceedings where the ALJ did not include plaintiff's pseudoseizures "in his paragraph 'B' analysis at step two" and "the ALJ's conclusory analysis at step three impedes meaningful review of his step three decision")). Plaintiff points to the ALJ's determination that "his providers cannot ascertain what type of seizures he is experiencing," despite Dr. McCawley's concern for psychogenic seizures and significant EEG testing that suggested Plaintiff's events were not epileptic as further evidence that analysis under Listing 12.07 would be correct. (Document No. 8 at pp. 7-8) (citing Tr. 21, 999-1000, 1272-1274, 1290).

Plaintiff also contends that the ALJ erred by failing to properly consider Plaintiff's inability to perform daily activities independently when assessing paragraph "B" criteria. Id.at p. 9. Paragraph "B" criteria require an ALJ to "use all of the relevant medical and nonmedical evidence in your case record to evaluate your mental disorder: the symptoms and signs of your disorder, the reported limitations in your activities, and any help and support you receive that is necessary for you to function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(F)(3)(a). An ALJ

8

must also consider if a plaintiff "could function without extra help, structure, or supervision; and whether you would require special conditions with regard to activities or other people." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(F)(1).

Plaintiff argues that the ALJ failed to adequately explain how Plaintiff's seizure-like events would impact his ability to work consistently. (Document No. 8 at p. 10). In support of his argument, Plaintiff cites to Victor R. v. Colvin, where the court remanded after the ALJ "failed to adequately explain why she omitted limitations on light exposure, time off-task, and absences from the RFC," in light of the claimant's migraine issue. Id. at pp. 11-12, citing No. 1:24-CV-205, 2025 WL 33699, at *4 (M.D.N.C. Jan. 6, 2025) (citation omitted). Plaintiff highlights his eight emergency room visits between July 2021 and May 2022 for seizure-like events and his multiple seizure-like events per month over thirteen months between July 2023 and August 2024. Id. (citing Tr. 402-404, 445-448, 539, 543, 554, 561, 575, 588, 597, 608). Plaintiff also points toward his Function report, as well as the 3rd Party Function Report completed by his mother, to support his contention that the ALJ failed to correctly analyze paragraph "B" criteria. Id. at p. 10 (citing Tr. 315-316, 320-321, 323, 350-354). Plaintiff argues these reports are substantial evidence of his inability to perform everyday tasks without relying on his brother and mother for assistance. Id. Plaintiff asserts that the ALJ failed to consider the impact that Plaintiff's seizure-like events documented in these function reports would have on his ability to work Id. at pp. 11-12. As a result, Plaintiff contends that his seizure disorder was not correctly analyzed under paragraph "B" criteria and that the ALJ's failure to do so means the RFC assessment was not supported by substantial evidence, necessitating remand. Id. at p. 13.

In response, Defendant argues that the ALJ properly considered the symptoms of Plaintiff's seizure disorder and sufficiently discussed all relevant medical evidence. (Document No. 9, p. 6).

"[A]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." Id. at p. 7 (citing Hoglen v. Saul, 1:20- CV-061-MOC-WCM, 2021 WL 521211, at *2 (W.D.N.C. Jan. 22, 2021) (internal citation omitted)). Defendant asserts that the ALJ specifically discussed Listings 12.04, 12.06, and 12.15, and in doing so evaluated identical paragraph "B" criteria necessary to satisfy Listing 12.07. See 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.00A, 12.04, 12.06, 12.07, 12.15. Defendant goes on to claim that because Plaintiff's seizure-like event symptoms were evaluated under the same paragraph "B" criteria under different listings, evaluation of Plaintiff's seizure disorder under Listing 12.07 is moot. (Document No. 9 at p. 9). Defendant asserts that Plaintiff's reliance on Miller is consequently misguided, as the ALJ specifically considered both the impact of Plaintiff's pseudoseizures symptoms and mental impairments when evaluating paragraph "B" criteria for Listings 12.04, 12.06, and 12.15, finding that Plaintiff had a normal attention span and ability to concentrate. Id. (citing Tr. 22, 740, 749, 1004, 1067, 1171, 1195, 1202, 1296); (see also Miller v. Saul, 2019 WL 7372706, at *4 (W.D.N.C. Dec. 30, 2019)).

Defendant also contends that an ALJ errs only when the reviewing court is "left to guess about how the ALJ arrived at his conclusions." Id. at p. 10 (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015)). If the ALJ presents a "logical bridge" that connects the evidence to the ALJ's conclusions, the ALJ's obligation is satisfied. Id. As long as "the agency's path may reasonably be discerned," the Court will not "upset" an administrative decision. Id. at p. 10 (citing Alaska Dept. of Envt'l Conservation v. E.P.A., 540 U.S. 461, 497 (2004) (internal citation omitted)). Plaintiff's own testimony revealed that he was only affected for several minutes before feeling normal following a seizure-like event. Id. at p. 11 (citing Tr. 26, 714, 726, 754). Defendant's

10

review of Plaintiff's testimony and the record further revealed that Plaintiff was alert and able to answer questions appropriately, and that he had normal neurological and psychiatric examinations the morning after a seizure. Id. (citing Tr. 26, 540,544,555,561-562, 590, 597). Defendant argues the ALJ examined all relevant evidence in the record, including Plaintiff's subjective allegations, and found that the totality of the evidence did not support the inclusion of "off-task" or "absenteeism" provisions in Plaintiff's RFC. Id. (citing Fagan v. Kijakazi, No. 1:20CV706, 2021 WL 5566481, at *7 (M.D.N.C. Nov. 29, 2021) (citation omitted)). Defendant states that the standard is not whether a factfinder could have assessed greater limitations than the ALJ found, but instead whether conflicting evidence allows reasonable minds to differ. Id. at p. 12 (citing Jackson v. Astrue, 467 Fed. App' x 214, 216 (4th Cir. 2012) (quotation omitted).

The undersigned finds that the ALJ did not err in evaluating Plaintiff's underlying seizure condition. Plaintiff's argument regarding Listing 12.07 is insufficient, as the ALJ clearly examined Plaintiff's seizure disorder's symptoms in evaluating other listings with equivalent criteria, such that evaluation under 12.07 would bear the same result. See (Document No. 8 at pp. 5-9); (Tr. 21-22). Following the initial hearing on December 1, 2023, the ALJ requested medical interrogatories from Dr. Koenig, a medical expert and neurologist, to help determine what listing would be most appropriate for Plaintiff's seizure disorder. (Document No. 9 at pp. 13-14) (citing Tr. 27, 1160-1164). Based on the medical record available at the time, Dr. Koenig could not say whether Plaintiff's seizures were epileptic or psychogenic in nature and recommended that further EEG testing be ordered to make a determination. (Tr. 21, 1160-1164). Defendant contends that after reviewing Dr. Koenig's opinion, the ALJ evaluated Plaintiff's subsequent EEG test results and determined that 11.02 was the appropriate listing to examine Plaintiff's seizure disorder. (Document No. 9 at pp. 8-9) (citing Tr. 21-23). Further, the undersigned finds that Plaintiff's

reliance on <u>Miller</u> to argue that the ALJ erred in failing to examine Plaintiff's symptoms under 12.07 is misplaced because the ALJ in <u>Miller</u> evaluated the claimant under 12.04 and 12.06 but limited his analysis to the claimant's mental impairments without considering the claimant's seizure symptoms. (Document No. 8 at pp. 5-6); <u>Miller</u>, 2019 WL 7372706 at *4 (2019). Here, the ALJ considered all of Plaintiff's symptoms, including ones arising from his seizures, in evaluating paragraph "B" criteria under 12.04, 12.06, and 12.15, suggesting that a remand under <u>Miller</u> would not be appropriate in this case. (Document No. 9 at pp. 9-10) (<u>citing</u> Tr. 21-23; <u>Miller</u>, 2019 WL 7372706).

The undersigned also finds that the ALJ sufficiently considered and weighed both Plaintiff's subjective evidence and the objective medical record evidence when evaluating paragraph "B" criteria. Plaintiff's argument that the ALJ did not properly weigh substantial evidence related to Plaintiff's independence and ability is insufficient, as the ALJ repeatedly weighed Plaintiff's subjective evidence alongside the medical evidence within the record. (<u>See</u> Document No. 8 at pp. 8-13, Document No. 9 at pp. 10-12). While Plaintiff contends the ALJ failed to consider Plaintiff's struggles in daily activities, the ALJ repeatedly cited Plaintiff's function reports discussing daily activities in his decision and even held an additional supplementary hearing to evaluate further evidence where aspects of Plaintiff's independence, such as his driving, were discussed. (Document No. 8 at p. 10 (<u>citing</u> Tr. 315-316, 320-321, 323, 350-354)); (Tr. 20-24, 69-80). The undersigned is persuaded that the ALJ thoroughly considered substantial evidence in the record when evaluating paragraph "B" criteria regarding Plaintiff's level of independence and that the ALJ came to a well-founded, logical conclusion regarding Plaintiff's ability to work. <u>See</u> <u>Thomas v. Berryhill</u>, 916 F.3d 176, 189 (4th Cir.) (recognizing that a reviewing ALJ "[does] not labor under the impossible obligation to refer to every piece of

evidence contained in the record."). The undersigned finds that the ALJ's review in this matter, which included two hearings and a detailed decision, established a logical conclusion that Plaintiff could sufficiently perform in a working environment. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016); see also Alaska Dept. of Envt'l Conservation, 540 U.S. at 497 (internal citation omitted). As such, Plaintiff's alleged errors regarding the underlying seizure disorder are insufficient cause for reversal or remand.

### B. Treating Physicians' Opinions

Next, Plaintiff contends that Defendant failed to properly evaluate the medical opinions of Ronald Koenig, M.D., a reviewing neurologist, considering Plaintiff's treating physicians' opinions. (Document No. 8 at p. 13). Plaintiff criticizes Dr. Koenig's testimony on the grounds that he lacked objective medical and other evidence necessary to form an opinion on Plaintiff's impairments. Id. at p. 14. Plaintiff points to Dr. Koenig's conclusion that Plaintiff had no medically determinable impairments, which differs from the ALJ's own findings that Plaintiff suffered from a crush injury to the left hand, seizure disorder, migraines, and other psychological disorders. Id. at p. 15 (citing Tr. 20, 1163). The ALJ also stated that Dr. Koenig's opinion was consistent with updated evidence, but Plaintiff notes that Koenig never reviewed or evaluated Plaintiff in light of that evidence. Id. (citing Tr. 27). Plaintiff asserts that remand is necessary to properly evaluate Dr. Koenig's opinion.

In opposition to Dr. Koenig's findings, Plaintiff highlights the testimony of Plaintiff's treating physicians, neurologist Gwyneth McCawley, M.D., primary care provider Nathaniel Jablecki, M.D., and mental therapist Shannon Mitchell, P.A. Id. at p. 15. Dr. McCawley opined that Plaintiff suffered between 3-4 seizures a week, and that these events included loss of consciousness, Plaintiff waking up on the floor, and witness reports of full body convulsions. (Tr.

1135).  Plaintiff argues Dr. McCawley also indicated that Plaintiff's seizures interfere with his daily activities, impacting his ability to drive or use machinery that could injure him, and that Plaintiff needs eight hours of rest after a seizure.  (Document No. 8 at p. 16 <u>citing</u> Tr. 1136).  Dr. McCawley also noted that Plaintiff's condition would likely result in good and bad days and that he would be absent from work for more than four days per month.  <u>Id.</u> (<u>citing</u> Tr. 1137).  Plaintiff points to Dr. Jablecki's findings that Plaintiff had somewhere between 12 and 24 seizure events in a month, and that the seizures were not predictable in nature.  <u>Id.</u> at p. 17 (<u>citing</u> Tr. 1135).  Dr. Jablecki also opined that Plaintiff would need 15–20-minute breaks throughout an eight-hour workday and would likely miss more than four days of work a month due to his impairment.  <u>Id.</u> (<u>citing</u> Tr. 1147).  Similarly, Plaintiff offers P.A. Mitchell's conclusion that Plaintiff's psychiatric condition would aggravate his physical symptoms, and that Plaintiff would likely miss more than four days of work a month as a result.  <u>Id.</u> (<u>citing</u> Tr. 1152).

Plaintiff further argues the ALJ's findings insufficiently analyze the treating physicians' opinions and concerns.  <u>Id.</u> at pp. 17-18.  Plaintiff asserts that an ALJ should include "evidence from other medical sources" when determining the consistency of a medical opinion."  <u>Id.</u> at p. 18 (<u>citing</u> 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).  Plaintiff then cites to <u>Linger v. Comm'r of Soc. Sec.</u>, where the ALJ found that a claimant could maintain employment as a laborer and perform activities without "significant issues," but failed to reconcile such a finding with the opinions of two treating doctors.  <u>Id.</u> at p. 18 (<u>citing</u> 2025 WL 40548, at *6 (4th Cir. Jan. 7, 2025)).  Similarly, Plaintiff asserts the ALJ, in finding Plaintiff could work without absences, failed to properly weigh the opinions of Dr. McCawley, Dr. Jablecki, and P.A. Mitchell, who all opine Plaintiff needs more than four days off from work per month due to his impairment.  <u>Id.</u> at p. 19.  Plaintiff contends the ALJ finding these opinions inconsistent with the overall record is illogical

and if the ALJ had properly weighed the treating physicians' opinions in evaluating his impairments, Plaintiff would be found to be disabled. Id. Plaintiff argues that, in light of the ALJ's erroneous reliance on Dr. Koenig's opinion and his disregard for the treating physicians' opinions, the decision should be reversed and remanded. Id.

In response, Defendant maintains that the ALJ's reliance on Dr. Koenig's opinion is supported by both the record and the ALJ's knowledge of relevant standards. (Document No. 9 at p. 13). Defendant asserts that the ALJ's role is to consider the persuasiveness of the opinions and medical findings instead of assigning them weight. Id. at p. 12 (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). In describing an opinion's persuasiveness, the ALJ only needs to explain how the supportability and consistency factors were considered. Id. The RFC assessment is an administrative finding, not a medical opinion, that the ALJ alone is responsible for crafting, and he does so by considering all the relevant medical and other evidence in the record. Id. at p. 13 (citing Wykle v. Saul, No. 1:19-CV-155-MOC, 2020 WL 697445, at *6 (W.D.N.C. Feb. 11, 2020) (citation omitted)). Defendant argues that Dr. Koenig is a qualified clinical neurologist who provided an expert opinion on Plaintiff's seizure disorder and that the opinion was made based on Plaintiff's medical record available at the time. Id. at p. 13 (citing Tr. 27, 1160-1164). Defendant also asserts that the ALJ's reliance on Dr. Koenig's opinion was proper, and that Plaintiff's treating physicians later ordered the additional EEG testing Dr. Koenig recommended to determine the nature of Plaintiff's seizure-like events, which the ALJ reviewed and found dispositive in evaluating Plaintiff's condition. Id. at p. 14 (citing Tr. 27, 1163, 1175-76, 1276-79); (see also Tr. 21).

Defendant goes on to contend that the ALJ merely found portions of the treating physicians' opinions persuasive and other portions unpersuasive, in contrast to Plaintiff's

allegations that the ALJ engaged in a selective analysis.  Id. at p. 14.  The ALJ is the sole author of a claimant's RFC, and there is no requirement that an ALJ must adopt the entirety of a physician's opinion, even if that opinion is generally persuasive.  See Turner v. Commissioner, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024).  Regarding Dr. McCawley's and Dr. Jablecki's opinions, Defendant asserts the ALJ found certain limitations regarding ladders and driving persuasive, consistent with Plaintiff's migraine and seizure symptoms.  (Document No. 9 at pp. 14-15 (citing Tr. 27-28)).  The ALJ did not agree with their opinions regarding more extreme limitations, such as Plaintiff's need for frequent breaks or more than four days off from work, considering the objective evidence in the record.  Id.  The ALJ believed that these opinions were founded in Plaintiff's subjective complaints and not supported by medical evidence showing normal findings present in Plaintiff's neurological examinations both absent and following seizure-like events.  Id. at p. 15 (citing Tr. 28, 541, 544, 555, 562, 597-98, 73-74; Tr. 1003-1006).  Regarding P.A. Mitchell's opinions, the ALJ found them inconsistent with her own mental status examination, as well as others in the record showing that Plaintiff had good emotional regulations and presented with normal mood, intact memory, and normal attention span and concentration.  Id. at p. 15, (citing Tr. 28, see e.g., Tr. 541, 556, 575, 740, 749, 756, 929, 1004, 1046, 1067, 1111, 1117, 1124, 1171, 1194).  Defendant concludes that Plaintiff merely disagrees with how the ALJ weighed the evidence in light of conflicting opinions, which is exactly the province of an ALJ in these proceedings.  Id. at p. 15.  Defendant asks that the Court affirm the ALJ's ruling.  Id.

This issue presents a close call, but the undersigned ultimately finds Defendant's argument persuasive.  Defendant correctly states that, when evaluating a claim, an ALJ considers the persuasiveness of medical opinions without giving deference or assigning specific evidentiary

weight to medical opinions or prior administrative medical findings, regardless of medical source[3]. (Document No. 9, p. 12 (citing 20 C.F.R. § 404.1520c(a))). While Plaintiff has certainly highlighted persuasive portions of the record in support of his argument, the ALJ conducted a sufficient and thorough review of relevant physicians' opinions in this matter to determine that Plaintiff's subjective complaints were not supported by the objective medical evidence in the record. (Document No. 8 at pp. 15-18 (citing Tr. 1135-1137, 1145-1147, 1150, 1152); Document No. 9 at pp 14-15 (citing Tr. 27-29, 73-74, 541, 544, 555, 562, 597-598, 1000-1003)). The undersigned is persuaded that the ALJ considered both the objective and subjective evidence in making his decision and ultimately made an evaluation that simply did not fully endorse the treating physicians' recommendation regarding Plaintiff's need for impairment-related work absences. (Document No. 9 at pp.14-15) (citing Tr. 27-28). For example, the ALJ analyzed Dr. McCawley's opinions in his decision, explaining that some portions, like her recommendation for driving and machinery restrictions, were persuasive, but others were not. Id. It is clear that the ALJ was aware of the treating physicians' opinions in the record and that he conducted substantial analysis of those opinions, making Plaintiff's argument effectively a request to reweigh evidence in the record, which is inappropriate on appeal. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quotation omitted). In sum, the ALJ complied with 20 C.F.R. §§ 404.1520c and 416.920c in evaluating all relevant medical opinions in this matter, and as such there is insufficient cause for reversal or remand.

---

[3] The "treating physician rule," where an evaluating ALJ assigns more evidentiary weight to claimant's treating physicians' opinions, does not apply to claims filed after March 27, 2017. See Payne v. Comm'r of Soc. Sec., No. 1:20-CV-223-RJC, 2022 WL 680225, at *2 (W.D.N.C. Mar. 7, 2022); see also Parker v. Saul, 2021 WL 2546718, at *2 (E.D.N.C. June 21, 2021).

## CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Commissioner's determination be **AFFIRMED**.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: February 17, 2026

David C. Keesler
United States Magistrate Judge

19